# Supreme Court of Florida

_____

No. SC2020-1602
_____

**THE FLORIDA BAR**,
Complainant,

vs.

**BRUCE JACOBS**,
Respondent.

June 8, 2023

PER CURIAM.

Respondent, Bruce Jacobs, seeks review of a referee's amended report recommending that Jacobs be found guilty of multiple violations of Rule Regulating The Florida Bar (Bar Rule) 4-8.2(a) (Impugning Qualifications and Integrity of Judges or Other Officers) and recommending that he be suspended from the practice of law for 90 days.[1] Jacobs challenges the referee's findings of fact and recommendations as to guilt, arguing that while he did impugn the integrity of members of the judiciary, his statements were

_____

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

neither dishonest nor made with reckless disregard for the truth and therefore did not violate Bar Rule 4-8.2(a). The Bar asks this Court to approve the referee's findings of fact and recommendations as to guilt but challenges the referee's recommendation as to discipline, urging this Court to instead impose a two-year rehabilitative suspension. For the reasons discussed below, we approve the referee's findings of fact and recommendations as to guilt, but we disapprove the referee's recommendation as to discipline and instead impose a 91-day rehabilitative suspension.

## BACKGROUND

Jacobs, a veteran foreclosure defense attorney, has developed a set of legal theories that he has often argued on behalf of clients. His theories are based on the premise that a party seeking to foreclose on a defaulted mortgage should not be able to collect an equitable remedy if it came to the court with unclean hands. More specifically, Jacobs' theory is that in cases where a homeowner who borrowed money to purchase a home is now in default on payments, the holder of the note should not be allowed to enforce the note or foreclose on the mortgage if any faulty or defective assignments occurred after the closing on the note and mortgage.

Relevant to this case, Jacobs attempted to assert his theory in three separate foreclosure proceedings below, but his arguments were rejected. Jacobs then filed in those cases motions that included negative comments and accusations about courts and specific judges. This resulted in the Bar filing a three-count complaint against Jacobs alleging that he had impugned the qualifications or integrity of members of the judiciary. The Bar complaint was referred to a referee, who held hearings on both guilt and discipline and then submitted an amended report with the following findings and recommendations.

*Count I*

Jacobs represented the defendant in a foreclosure action in *HSBC Bank USA, National Association v. Aquasol Condominium Association, Inc.*, No. 2013-29724-CA-01 (Fla. 11th Cir. Ct.). After the circuit court entered a final judgment of foreclosure in favor of the plaintiff bank, Jacobs filed an appeal in the Third District Court of Appeal. Jacobs argued that the bank had no standing to foreclose because it was not both holder and owner of the note. Although Jacobs was aware of binding Third District case law stating that a party has standing in a foreclosure suit if it is either

- 3 -

the holder or the owner of the note, he did not cite this authority in his appeal.

When the Third District affirmed the judgment of foreclosure, Jacobs moved for rehearing en banc. In that motion, Jacobs made "numerous comments impugning the integrity of the judiciary," including:

> This Court's insistence on ignoring established Florida Supreme Court law to benefit bad corporate citizens is certain to cause chaos.
>
> . . . .
>
> Ownership controls the right to enforce the mortgage. This Court is acting illegally by instructing the law is otherwise.
>
> . . . .
>
> This is a biblical, spiritual journey for me. I have faith I will be protected because I am acting so clearly within the law and this Honorable Court is not.
>
> . . . .
>
> Banks have all the resources to do it right but made business decisions to do it fraudulently. It's as if they knew the Courts would always let them get away with it. . . . I call those judges traitors to the constitution.
>
> . . . .
>
> I've had to warn [clients] this broken system is riddled with fraud and perjury. The judges decide the rule of law, and whether any rule of law exists. Maybe the rule of law only applies to the rest of us.
>
> . . . .
>
> Any court that protects the monopoly over the rule of law is a traitor to the constitution and should be tried for treason.

After issuing an order directing Jacobs to show cause why he should not be sanctioned, the Third District issued an order declaring that Jacobs had filed a frivolous bad faith motion and had impugned the qualifications or integrity of the judiciary in violation of Florida Rule of Appellate Procedure 9.410(a). The Third District referred the matter to the Bar for consideration of discipline. *Aquasol Condo. Ass'n, Inc. v. HSBC Bank USA, Nat'l Ass'n*, 43 Fla. L. Weekly D2699 (Fla. 3d DCA Dec. 5, 2018).

*Count II*

Jacobs represented the defendant in a foreclosure action in *Bank of New York Mellon v. Atkin*, No. 2009-87096-CA-01 (Fla. 11th Cir. Ct.). During the proceedings, Bank of America, a named subject in matters raised in that case, filed a petition for writ of prohibition in the Third District, which prompted a response from Jacobs along with a motion to disqualify the Third District. *See Bank of Am., N.A. v. Atkin*, 303 So. 3d 583, 586 (Fla. 3d DCA 2018). In his response to the bank's petition, Jacobs made several negative comments about the Third District and circuit court judges, including:

> [T]his Court violated the standard of review, ignored Florida Supreme Court precedent, and falsified the facts in contradiction to the record.
>
> . . . .
>
> The impartiality of this Court is objectively questioned and it cannot issue a ruling with integrity in this case.
>
> . . . .
>
> A named circuit court judge acted with "blatant disregard for the rule of law and the client's constitutional rights" in an unrelated case and was upheld by this Court.
>
> . . . .
>
> A different, unnamed circuit court judge changed a favorable ruling because opposing counsel "threw a fundraiser for the new judge who rotated into the division."

The Third District concluded that Jacobs' statements, together with statements he made in a brief filed in the United States Supreme Court, impugned the qualifications and/or integrity of members of the judiciary. After issuing an order to show cause, the Third District entered an opinion referring Jacobs to the Bar for consideration of discipline. *Bank of Am., N.A. v. Atkin*, 271 So. 3d 145, 147 (Fla. 3d DCA 2019).

## *Count III*

Jacobs represented the defendant in a foreclosure action in *Bank of New York Mellon v. Atkin.* During the proceedings, Jacobs filed a motion for judicial disqualification in which he made several

negative comments about the circuit court and about the presiding circuit court judge, Judge Michael Hanzman, including:

> Judge Hanzman Has Repeatedly Ignored Obvious Fraud on the Court by Large Financial Institutions in Foreclosures While Abusing His Power to Chill Defense Counsel's Zealous Advocacy Against Those Financial Institutions[.]
>
> . . . .
>
> Judge Hanzman has made repeated statements on the record and off the record that reflect his indifference to large financial institutions presenting false evidence to the court to obtain the equitable relief of foreclosure. His personal finances appear to be heavily invested in the financial services sector which gives Mr. Atkin a reasonable fear Judge Hanzman will not be fair and impartial because it will negatively impact his significant personal financial holdings.
>
> . . . .
>
> [The court] has allowed the most rich and powerful segment of our society, the financial sector in which he is personally heavily invested in, to engage in felony misconduct and walk away without any punishment . . . .

The circuit court dismissed Jacobs' motion to disqualify for being untimely and legally insufficient. Later, in an order denying a motion for attorney's fees, Judge Hanzman noted Jacobs' repeated failure to cite adverse controlling authority and mentioned Jacobs' "scurrilous motion to disqualify this Court." Judge Hanzman declared that Jacobs "is unrepentant, undeterred, and continues to

engage in the exact same behavior he was sanctioned for and which is now presumably being investigated by the Bar."

The referee ultimately found as to all three counts that Jacobs made statements that impugned the qualifications or integrity of members of the judiciary and that he did so intentionally as a litigation tactic to obtain relief when he was unable to obtain relief without such attacks. The referee recognized that attorneys have an obligation to advocate zealously on behalf of clients but found that Jacobs' actions crossed a line into name-calling and violated Bar Rule 4-8.2(a). The referee further found that Jacobs did not provide an objectively reasonable factual basis for making any of his statements impugning the integrity of the judiciary.

Jacobs asserted a selective prosecution defense in the disciplinary proceeding, but the referee rejected the defense, finding that the presented evidence did not establish the elements of selective prosecution articulated in *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264 (S.D. Fla. 2007). The referee explained that the conduct of other attorneys described by Jacobs was not the same type of conduct Jacobs had been charged with and that "the case law is replete with lawyers from assorted and various practice areas

who have been prosecuted and disciplined for the same rule violations as those which have been alleged against respondent herein." The referee also found that Jacobs had been afforded due process at every stage.

Jacobs asserted other defenses as well, based on his history of mental health issues, his expressions of remorse, and his subsequent corrective behavior. The referee rejected these defenses, finding that they did not negate guilt, but she noted that the underlying facts could serve as potential mitigation when determining the appropriate discipline.

Based on these findings, the referee recommends that Jacobs be found guilty of three counts of violating Bar Rule 4-8.2(a). However, the referee found that the Bar failed to prove that Jacobs violated Bar Rule 4-3.3(a)(3) (False Evidence; Duty to Disclose) and so recommends that Jacobs be found not guilty of violating that rule. Neither party challenges the referee's findings or recommendation as to Bar Rule 4-3.3. For discipline, the referee recommends that Jacobs be suspended from the practice of law for 90 days.

## ANALYSIS

### A. The Referee's Findings of Fact and Recommendations as to Guilt.

Jacobs challenges the referee's findings of fact and recommendation that he be found guilty of violating Bar Rule 4-8.2(a). When we review a referee's findings of fact, our review is limited; when a referee's findings are supported by competent, substantial evidence in the record, we will not reweigh the evidence and substitute our own judgment for that of the referee. *See Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). When reviewing a referee's recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018). Ultimately, the party challenging a referee's findings of fact or conclusions as to guilt has the burden to demonstrate that there is no evidence in the record to support the referee's findings or that the record evidence clearly contradicts the referee's conclusions. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

The case before us concerns Bar Rule 4-8.2(a), which provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Although the language of Bar Rule 4-8.2(a) invites comparison to civil defamation standards, we have held that the defamation test articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), does not apply in these circumstances. *See Fla. Bar v. Ray*, 797 So. 2d 556, 559 (Fla. 2001). Instead, we use an objective test, asking if the lawyer had "an objectively reasonable factual basis for making the statements." *Id.* Thus, once the Bar presents evidence establishing that a lawyer made statements concerning the qualifications or integrity of a judge, the burden shifts to the respondent to provide an objectively reasonable factual basis for making the statements. *Id.* at 558 n.3.

Here, we approve the referee's findings of fact on the charged violations of Bar Rule 4-8.2(a). Addressing Count III first, Jacobs filed a motion in *Bank of New York Mellon v. Atkin* in which he made several assertions about circuit court judge Michael Hanzman, including that Judge Hanzman "repeatedly ignored obvious fraud on the court by large financial institutions in foreclosures" and

- 11 -

"made repeated statements on the record and off the record that reflect his indifference to large financial institutions presenting false evidence to the court." Jacobs further asserted that Judge Hanzman "has allowed the most rich and powerful segment of our society, the financial sector in which he is personally heavily invested in, to engage in felony misconduct and walk away without any punishment in violation of the Judicial Canons and the rule of law."

These remarks (and others made in Jacobs' motion) clearly comment on the integrity of a member of the judiciary. In fact, Jacobs admits that his statements impugned Judge Hanzman's integrity; he only denies that his statements were false or made with reckless disregard for the truth. However, Jacobs did not establish that he had an objectively reasonable basis for making the offending statements. He did not introduce at the disciplinary hearings any documents that were "obviously" fraudulent on their face but admitted into evidence by Judge Hanzman. Nor did he present evidence showing that Judge Hanzman's personal finances would have been substantially impacted by the outcome of *Atkin* such as to potentially establish an objectively reasonable basis to

accuse the judge of allowing banks to commit felony misconduct to protect his own financial interests. And while some witnesses who testified at the disciplinary hearings endorsed Jacobs' legal theories about foreclosure defense, no witness testified that Judge Hanzman (or any judge) had knowingly accepted fraudulent evidence or colluded with financial institutions.

However firmly held Jacobs' interpretations of foreclosure law may be, his specific legal theories about facts that purportedly establish unclean hands are not supported by case law out of the Third District. Even so, while the testimony elicited at the disciplinary hearings might suggest that Jacobs had a basis to believe his interpretations of foreclosure law and unclean hands were legally correct, the question before us is not whether Jacobs was right that the Third District misinterpreted foreclosure law. The question is whether Jacobs was entitled to impugn the integrity of judges who ruled against him. In the absence of evidence showing misconduct, collusion, or defiance of established law, Jacobs has not demonstrated that he had an objectively reasonable factual basis to accuse Judge Hanzman of allowing banks to commit felony misconduct to benefit his own financial interests,

- 13 -

especially when Judge Hanzman's actions could be explained as simply following controlling case law out of the Third District.

As to Counts I and II, our analysis is largely the same. The Bar introduced motions in which Jacobs accused both named and unnamed judges of acting outside the law, allowing banks to perpetrate fraud with impunity, and betraying the Constitution to protect the interests of financial monopolies.

There is no dispute that Jacobs made the statements identified by the referee, and those statements clearly concerned the qualifications or integrity of members of the judiciary. Thus, the burden shifted to Jacobs to show that he had an objectively reasonable factual basis for making the offending statements. As with Count III, Jacobs did not introduce any documents that were either proven or obviously fraudulent/falsified, nor did he elicit any testimony that actions taken by a criticized court were illegal or done to shield a financial institution from consequences.

Instead, Jacobs elicited testimony from attorneys and judges who spoke of Jacobs as a true believer, a man whose legal theories had been met with some success at the trial court level. These witnesses testified that some courts had been receptive to Jacobs'

unclean hands defense while other courts had rejected it. These witnesses essentially testified that there was legal support for Jacobs' unclean hands defense, and they opined that Jacobs' arguments were made in good faith.

However, if Jacobs' legal theories on foreclosure defense were embraced by controlling case law, he could have presented copies of relevant appellate decisions and trial court rulings that might show he had a reasonable basis to criticize judges who refused to follow that controlling law. But Jacobs did not present any evidence showing that a circuit or district court judge had defied established law to benefit a financial institution or that any judge's finances would have been substantially affected by the outcome of a case such that he or she was required to be disqualified from it. Accordingly, Jacobs did not meet his burden of establishing that he had an objectively reasonable factual basis to make his statements which impugned the integrity of those judges.

Ultimately, the record clearly supports the referee's finding that Jacobs made statements in three separate legal proceedings that impugned the integrity of members of the judiciary, and Jacobs has failed to show that he had an objectively reasonable factual

basis for making the statements. Because the record evidence does not clearly contradict the referee's recommendation that Jacobs be found guilty of three violations of Bar Rule 4-8.2(a), we approve the referee's findings of fact and recommendations as to guilt.

We also find no merit in Jacobs' challenge to the referee's rejection of his selective prosecution defense. Jacobs argues that the Bar failed to prosecute bank attorneys who purportedly committed various Bar Rule violations, but even assuming those bank attorneys did violate Bar Rules, their conduct does not excuse misconduct by Jacobs, and their alleged violations are not the same type of misconduct Jacobs is charged with here such as to suggest a selective prosecution. Moreover, Jacobs does not address the many attorneys in various practice areas who have been brought up on similar disciplinary charges to those raised against Jacobs in this case. We therefore approve the referee's rejection of Jacobs' selective prosecution defense.

## B. The Referee's Recommendation as to Discipline.

In reviewing a referee's recommended discipline, this Court's scope of review is broader than it is when we review a referee's findings of fact, for it is ultimately this Court's responsibility to

order the appropriate sanction. *Fla. Bar v. Kinsella*, 260 So. 3d 1046, 1048 (Fla. 2018); *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const. Prior to making a recommendation on discipline, a referee must consider this Court's existing case law and the Florida Standards for Imposing Lawyer Sanctions (Standards), which are subject to aggravating and mitigating circumstances. *See, e.g., Fla. Bar v. Abrams*, 919 So. 2d 425, 430 (Fla. 2006); *Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999).

From our review of the referee's report, we do not find that the referee's recommended 90-day non-rehabilitative suspension is reasonable under the facts and circumstances of this case. However, we also reject the Bar's recommended sanction of a two-year rehabilitative suspension.

As to the Standards, the referee concluded that Standard 7.1(b) is applicable to this case. Standard 7.1(b) states that suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system. Fla. Std. Imposing Law. Sancs. 7.1(b). We agree that

Standard 7.1(b) is applicable given the finding that Jacobs' conduct was a deliberate litigation tactic.

As to aggravation and mitigation, the referee found the existence of three aggravating factors: a pattern of misconduct; multiple offenses; and substantial experience in the practice of law. *See* Fla. Std. Imposing Law. Sancs. 3.2(b)(3), (4), (9). The referee also found the existence of three mitigating factors: absence of a prior disciplinary record; personal or emotional problems; and character or reputation. *See* Fla. Std. Imposing Law. Sancs. 3.3(b)(1), (3), (7).

Neither party challenges the referee's findings on Jacobs' substantial experience in the practice of law or multiple offenses as aggravators. Moreover, the referee's finding of a pattern of misconduct is supported by the record, as evidence showed that Jacobs engaged in similar tactics and used impugning language in cases where judges rejected his theories of foreclosure defense.

The Bar argues, however, that the referee should have found an additional aggravator under Standard 3.2(b)(7): refusal to acknowledge the wrongful nature of the conduct. "Like other factual findings, a referee's findings of mitigation and aggravation

carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee's failure to find that an aggravating factor or mitigating factor applies is due the same deference." *Germain*, 957 So. 2d at 621 (internal citation omitted).

We find that the referee's rejection of "refusal to acknowledge the wrongful nature of the conduct" as an aggravating factor is not without record support, even though the referee rejected "remorse" as a mitigating factor. Essentially, the Bar treats the absence of the existing mitigating factor of remorse as being equivalent to the existence of the aggravating factor of refusal to acknowledge the wrongful nature of one's conduct. But during the final hearing and in his briefs on review, Jacobs admitted to behaving disrespectfully by using strong and offensive language against judges, and he testified that he has apologized to those judges and has sought treatment for his anger. Thus, while the record supports that Jacobs is not *remorseful* about violating Bar Rule 4-8.2(a) (because he believes he did not violate the rule as worded), the record also supports a finding that Jacobs has not refused to acknowledge "the wrongful nature" of his conduct. Accordingly, the Bar has not

shown that the referee's rejection of this additional aggravating factor was clearly erroneous or without record support.

As to mitigation, the Bar only challenges one of the found mitigators: the existence of personal or emotional problems. The Bar argues that if Jacobs' long-term emotional problems were the cause of his misconduct, then they should not be deemed a mitigating factor. However, the referee did not find that Jacobs' emotional problems were the cause of his behavior; she found that Jacobs' behavior was a tactical decision employed to frustrate judges into disqualifying themselves. Because the Bar's argument is based on facts not found by the referee and because multiple witnesses testified that Jacobs has a history of emotional issues, the record supports the referee's finding of this mitigating factor.

Turning to existing case law, the referee cited *Florida Bar v. Norkin*, 132 So. 3d 77 (Fla. 2013), where this Court rejected a recommended 90-day non-rehabilitative suspension and instead imposed a two-year suspension, which required the attorney to demonstrate rehabilitation. *Norkin* does indeed bear many similarities to the present case. The respondent in *Norkin* was disciplined for (among other offenses) impugning the integrity of

- 20 -

members of the judiciary, and the referee there found that the respondent acted as he did to obtain judicial disqualifications that he was unable to obtain otherwise. *Id.* at 80-81. In our decision in *Norkin,* we compared the circumstances of that case to those in *Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009), where similar unprofessional behavior required a rehabilitative suspension. 132 So. 3d at 91. Notably, the referee in *Norkin* also found the existence of multiple aggravating factors—including multiple offenses and pattern of misconduct, both of which were found in this case. *Id.* at 87. We approved the referee's findings and recommendations as to guilt in *Norkin,* but we rejected the recommended 90-day non-rehabilitative suspension and instead suspended the respondent for two years. *Id.* at 93.

The Bar urges us to sanction Jacobs with a similarly lengthy period of suspension in this case. However, it is important to note why a two-year suspension period was appropriate in *Norkin.* While some of the aggravators found in *Norkin* were also found in this case, the referee in *Norkin* found four additional aggravators as well, including that the respondent had previous disciplinary offenses. *Id.* at 91. The referee here, by contrast, found that the absence of

any prior disciplinary record was a *mitigating* factor for Jacobs. Thus, while we agree with the Bar that Jacobs' misconduct is of such nature that a demonstration of rehabilitation is needed before he is readmitted, particularly in light of his multiple offenses and pattern of misconduct, we do not agree that two years is the appropriate period of suspension.

The Bar directs this Court to other, more recent cases such as *Florida Bar v. Patterson*, 330 So. 3d 519 (Fla. 2021), where we imposed a two-year suspension on an attorney who violated Bar Rule 4-8.2 and other Bar Rules. But like the attorney in *Norkin*, the attorney in *Patterson* had significant prior disciplinary action; in fact, we expressly declared that the appropriate sanction in *Patterson* "turn[ed] largely on the relationship between th[at] case and Patterson's previous disciplinary proceeding . . . ." *Id.* at 521. Recall that the absence of a prior disciplinary record in this case was found to be a mitigating factor.

Accordingly, we find that the circumstances of this case, including the relevant aggravation and mitigation, require that Jacobs demonstrate rehabilitation before he is readmitted, but we find that a two-year suspension is inappropriate in light of Jacobs'

absence of previous disciplinary offenses. We therefore reject the referee's recommended 90-day non-rehabilitative suspension and instead impose a 91-day rehabilitative suspension.

## CONCLUSION

For the reasons discussed above, we approve the referee's report as to the findings of fact and recommendations as to guilt but disapprove as to the recommended discipline. Bruce Jacobs is hereby suspended from the practice of law for 91 days. The suspension will be effective thirty days from the filing of this opinion so that Jacobs can close out his practice and protect the interests of existing clients. If Jacobs notifies this Court in writing that he is no longer practicing and does not need thirty days to protect existing clients, this Court will enter an order making his suspension effective immediately. Jacobs shall fully comply with Rules Regulating The Florida Bar 3-5.1(h) and 3-6.1, if applicable. In addition, Jacobs shall accept no new business from the date this order is filed until he is reinstated. Jacobs is further directed to comply with all other terms and conditions of the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from

Bruce Jacobs in the amount of $10,671.75, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, and Tonya L. Avery, Bar Counsel, The Florida Bar, Miami, Florida; and Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida,

for Complainant

Bruce Jacobs of Jacobs Legal, PLLC, pro se, Miami, Florida,

for Respondent

- 24 -