# Supreme Court of Florida

_____

No. SC16-1438
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**KELSAY DAYON PATTERSON,**
Respondent.

October 19, 2018

PER CURIAM.

We have for review a referee's report recommending that respondent, Kelsay Dayon Patterson, be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and that he receive an admonishment for his misconduct. The Florida Bar has petitioned for review, challenging the referee's recommendations as to guilt and the recommended discipline. We have jurisdiction. *See* art. V, § 15, Fla. Const. For the reasons discussed below, we approve the referee's findings of fact and recommendation of guilt as to Bar Rule 3-4.3 (Misconduct and Minor Misconduct). However, we disapprove the referee's recommendations of no guilt as to Bar Rules 4-1.7

(Conflict of Interest; Current Clients), 4-8.2(a) (Judicial and Legal Officials; Impugning Qualifications and Integrity of Judges or Other Officers), and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice), and find Patterson guilty of violating each of these rules. We also disapprove the referee's recommended discipline as far too lenient, and instead impose a one-year suspension from the practice of law.

## I. BACKGROUND

In August 2016, The Florida Bar filed a complaint against Patterson alleging that he violated several Bar Rules in his representation of Johanna Faddis in her civil action against the City of Homestead and other defendants. The Bar's complaint was referred to a referee. The referee held a hearing on both guilt and discipline, and submitted a report containing her findings and recommendations for the Court's review. The referee made the following findings and recommendations.

Patterson represented Faddis in a civil action alleging invasion of privacy against the City of Homestead, its individual council members, and an investigative firm employed by the city. On November 14, 2012, the Circuit Court of the Eleventh Judicial Circuit entered an order striking Faddis's pleadings on the grounds that she had committed perjury and awarding final judgment in favor of the city and the other defendants. The circuit court found that Faddis's testimony

- 2 -

during a deposition in the case on the issue of whether she had been sexually harassed, a material issue in the case, was inconsistent with deposition testimony she gave on the same issue in a separate case involving the city. The circuit court also found that Patterson represented Faddis at the deposition in the separate case and that he should have been aware of the inconsistent testimony prior to filing the complaint. The circuit court ultimately awarded attorney's fees to the city and imposed sanctions against Faddis and Patterson for acting in bad faith. The Third District Court of Appeal affirmed the circuit court's order, finding Faddis's conduct was "undertaken with intent to deceive, constituted a deliberate scheme to subvert the judicial process, and amounted to a fraud upon the court." *Faddis v. City of Homestead*, 121 So. 3d 1134, 1135 (Fla. 3d DCA 2013).

While proceedings were ongoing in the circuit court, Patterson also pursued a civil rights claim against the city and other defendants under 42 U.S.C. § 1983 (2012) in the U.S. District Court for the Southern District of Florida. On September 20, 2013, Patterson sent Judge Jose E. Martinez, the presiding judge in the case, a letter detailing the history of Faddis's circuit court case and expressing his dissatisfaction with its outcome, comparing the alleged injustice suffered by Faddis to the biblical story of Susanna. He expressed his belief that influential members of the community had manipulated the outcome of the case and implied

that a district court judge was biased in favor of opposing counsel. The letter was also sent to judges in the Eleventh Judicial Circuit and Third District.

Patterson sent the September 20, 2013, letter based on advice he purportedly received from Judge James Lawrence King, Sr. in 2002, and out of a belief that he was denied the opportunity to present evidence prior to being sanctioned by the circuit court that demonstrated his conduct was not fraudulent.

On December 18, 2013, the circuit court entered a final judgment awarding in excess of $160,000 in attorney's fees against Patterson and Faddis equally. Patterson appealed the circuit court's order on behalf of Faddis to the Third District. The district court affirmed the circuit court's order to the extent it applied to Faddis, *see Faddis v. City of Homestead*, 160 So. 3d 438 (Fla. 3d DCA 2014) (table), but dismissed the appeal for lack of jurisdiction to the extent Patterson attempted to obtain review of the order as it applied to him, finding that Patterson had failed to identify himself as an appealing party in the notice of appeal. The Third District also directed Faddis and Patterson to show cause why attorney's fees should not be awarded to the city and other defendants for their prosecution of a frivolous appeal. Patterson filed a response containing "incendiary and disparaging comments," such as "We cannot all be judges, politicians, wealthy business men, or local big named law firms with tremendous influence who can supersede all laws on the books." In an opinion dated February 11, 2015, the Third

- 4 -

District found that each of the three claims advanced by Patterson on appeal were frivolous and ordered him alone to pay appellate attorney's fees. *Faddis v. City of Homestead*, 157 So. 3d 447 (Fla. 3d DCA 2015), *review dismissed*, 163 So. 3d 508 (Fla. 2015). Before ordering appellate attorney's fees against Patterson, the district court made the following observation:

> Curiously, Patterson's response to our order to show cause makes no argument on behalf of his client. Rather, it is a screed following hard upon his reply brief filed in this appeal, where he insinuates that he is "being bullied" by the parties, their counsel, or the court in this case, and that a "miscarriage of justice . . . is *knowingly* being perpetrated upon him," (emphasis added). He likens "the story" of the case he filed on behalf of Faddis to "the story of Fidel Castro's suffocating grip of Cuba, the Holocaust, Jim Crow laws, and Hillary Clinton." According to him, the trial court sanction—and probably, now this one as well—are part of some political scheme to silence him and his client. Patterson is grossly mistaken. This case is not about political connection, human atrocities, bullies, or, as he would have it, the ability of "strong minded individuals" to stand up for the powerless. This case is about an officer of the court who proffered false evidence in violation of the Rules Regulating the Florida Bar. *See* R. Regulating Fla. Bar 4–3.3(a)(4). It is now probably also about an attorney who has impugned the qualifications and integrity of the judges of this court, the trial court, or other officers. *See* R. Regulating Fla. Bar 4–8.2(a).

*Id.* at 453 (footnote omitted).

On these facts, the referee recommended that Patterson be found guilty of violating Bar Rule 3-4.3 (Misconduct and Minor Misconduct) only. The referee determined that the September 20, 2013, letter to Judge Martinez and the filings in the Faddis case contained emotionally charged statements with conspiratorial

overtones, but that there was no evidence Patterson knew sending the letter was inappropriate or that he intended to have improper communications with a court. She concluded that Patterson strongly believed that his actions were the appropriate way to expose what he perceived as wrongdoing in Faddis's case—i.e., that politics and undue influence controlled the outcome of the case—and that Patterson's belief, along with the ethical duty he owed Faddis, warranted a recommendation of no guilt as to Bar Rules 4-8.2(a) (Judicial and Legal Officials; Impugning Qualifications and Integrity of Judges or Other Officers) and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). The referee also rejected the Bar's contention that Patterson advanced his own interests instead of his client's interests in the appeal of the circuit court's December 18, 2013, order, creating a conflict of interest in violation of Bar Rule 4-1.7 (Conflict of Interest; Current Clients). The referee found Patterson's explanation credible that his advocacy in the case was aimed at the sanction as a whole, including Faddis.

In recommending discipline, the referee found two aggravating factors and ten mitigating factors. Instead of exclusively relying on the factors listed in the Florida Standards for Imposing Lawyer Sanctions to make her findings in aggravation and mitigation, *see* Fla. Stds. Imposing Law. Sancs. 9.22, 9.32, the referee listed several factors she considered in recommending discipline. In

aggravation, the referee found that Patterson refused to acknowledge the wrongful nature of his conduct and that he filed for bankruptcy to avoid the consequences of the sanctions imposed against him. As to mitigation, the referee found the following: (1) the absence of a prior disciplinary record; (2) full cooperation with the disciplinary board; (3) respectful and professional attitude; (4) Patterson's belief that sending a letter to a judge was the correct procedure; (5) Patterson's volunteer work with Big Brothers and Big Sisters; (6) the harshness of the order and opinions issued in Faddis's case; (7) the imposition of sanctions by the circuit court; (8) Patterson's passion for his clients and unselfish motive; (9) Patterson's devotion of significant time and resources to ensuring equal access to the judicial system; and (10) Patterson's existing financial problems that a suspension, as opposed to a reformation program, would only exacerbate.

As a sanction, the referee recommended that Patterson receive an admonishment and that he be placed on probation with various conditions for one year. She also recommended that costs be awarded to the Bar in the amount of $2,827.09.

The Bar filed a notice of intent to seek review of the report of referee, challenging the referee's recommendations of no guilt as to Bar Rules 4-1.7, 4-8.2(a), and 4-8.4(d), as well as the recommended discipline. Patterson did not file an answer brief in this case. After reviewing the report of referee and the Bar's

brief, the Court directed Patterson to show cause why the referee's recommended discipline should not be disapproved and a more severe sanction be imposed.

## II. ANALYSIS

### A. Findings of Fact and Recommendations of Guilt

The Bar challenges the referee's recommendations of guilt as to Bar Rules 4-1.7, 4-8.2(a), and 4-8.4(d).[1] To the extent the Bar challenges the referee's findings of fact for the rule violations, this Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000); *see also Fla. Bar v. Jordan*, 705 So. 2d 1387, 1390 (Fla. 1998). To the extent the Bar challenges the recommendations as to guilt, this Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). Ultimately, the party challenging the referee's finding of fact and conclusion as to guilt has the burden to

---

1. We note that the referee's findings of fact and recommendation of guilt as to Bar Rule 3-4.3 are not challenged by either party. Accordingly, and having reviewed the record, we approve the referee's findings of fact and recommendation of guilt as to Bar Rule 3-4.3 without further comment.

demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

## Bar Rule 4-1.7

Broadly speaking, Bar Rule 4-1.7 prohibits a lawyer from representing a client if the representation creates a conflict of interest. The rule specifically prohibits a lawyer from representing a client if there is a substantial risk that the representation will be materially limited by the lawyer's own personal interests. *See* R. Regulating Fla. Bar 4-1.7(a)(2). The comment to the rule explains that "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client." *Id.* cmt. Such loyalty may be "impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action on behalf of his or her client because of the lawyer's other interests." *Fla. Bar v. Roberto*, 59 So. 3d 1101, 1104 (Fla. 2011).

Here, the Bar claims that Patterson used the appellate rights of his client, Faddis, to assert his own interests and seek relief from the circuit court's December 18, 2013, order for himself. The circuit court's order imposed in excess of $160,000 in attorney's fees against Patterson and Faddis equally, giving Patterson a significant financial interest in the outcome of any subsequent appeals of the order. Patterson acknowledged such in his formal hearing testimony, stating with

respect to Faddis's appeal of the order: "I've always argued that [Faddis] was entitled to an evidentiary hearing and a due process hearing. And then I would be entitled to the same too." That interest created a clear and substantial risk of materially limiting Patterson's independent judgment and loyalty to Faddis, who had an interest in reducing or eliminating her liability under the December 18, 2013, order, even if it was not to the benefit of Patterson. Given the existence of such risk, Patterson was required under Bar Rule 4-1.7(b)(4) to obtain Faddis's informed consent, confirmed in writing, to his continued representation of her. There is no documentation in the record indicating he obtained such consent.

Despite the foregoing, Patterson represented Faddis in her appeal of the December 18, 2013, order. The filings submitted to the district court in the case make clear that Patterson's financial interest in the matter, as well as his personal views on the legal system and the actions of the circuit court, ultimately supplanted his independent judgment and the loyalty he owed to Faddis. Patterson used the initial brief and other filings in the case to present argument on matters that were either already considered by the district court—the dismissal of Faddis's lawsuit— or on his own behalf. His arguments largely focused on the alleged violation of his due process rights, the perceived injustice in the circuit court's actions, and his views on the inequities of the legal system. Patterson devoted only part of the initial brief to presenting argument on Faddis's behalf—alleging that the circuit

court awarded sanctions against her without express factual findings of bad faith, a claim the district court found lacked any basis in reality. *Faddis*, 157 So. 3d at 45. None of the filings expressly sought a reduction in the fees owed by Faddis, and Patterson failed to advocate on Faddis's behalf altogether in the response to the district court's show cause order, requesting instead that the court relieve just him from the financial burdens of the circuit court's order.

Accordingly, the record in this case clearly reflects that Patterson had a significant personal and financial interest in the outcome of Faddis's appeal; that he failed to inform Faddis of such interests and obtain her informed consent for his continued representation of her; and that Patterson's personal and financial interests ultimately became the focus of Faddis's appeal, despite the loyalty he owed her. Patterson's actions not only hindered Faddis's ability to obtain a more favorable outcome in her appeal, but nearly resulted in the district court imposing additional sanctions against her for pursuing a frivolous appeal. We therefore disapprove the referee's recommendation and find Patterson guilty of violating Bar Rule 4-1.7.

## Bar Rule 4-8.2(a)

Bar Rule 4-8.2(a), in relevant part, states that a "lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." The applicable

standard under the rule is not whether the statement is false, but whether the lawyer had an objectively reasonable factual basis for making the statement. *Fla. Bar v. Ray*, 797 So. 2d 556, 558-59 (Fla. 2001). The burden is on the lawyer who made the statement to produce a factual basis to support the statement. *Id.* at 558 n.3.

The Bar claims that several statements contained in Patterson's September 20, 2013, letter to Judge Martinez and in the filings for Faddis's appeal of the December 18, 2013, order violated Bar Rule 4-8.2(a). The record reflects that there is no dispute as to whether Patterson sent the September 20, 2013, letter, or as to whether he prepared and submitted the filings in Faddis's appeal. In both the letter and court filings, Patterson either disparaged opposing counsel or expounded upon the alleged bias of judges and the shortcomings of the legal system. For example, during the appeal of the December 18, 2013, order, Patterson stated the following in the reply brief:

> Here is the funny thing: Law is not science or math. It does not depend on true holdings and reasons that will allow you to successfully chart a path to Mars or create a molecule of water. Law is whatever the judge or judges that day say it is.

Additionally, in the letter to Judge Martinez, Patterson repeatedly suggested that judges favor one class of influential citizens over all others, referred to opposing counsel as the "elders," and cautioned Judge Martinez that "[j]udges must recognize that in deciding to elevate people like these elders to a status of

being above the laws they are complicit in further corroding any remaining sense of justice and fair play left within these elders." He also stated the following:

> The undersigned cannot accept that judges who have presided over complex cases, raised children, who have read holy scripts/manuals, and receive the highest levels of diversified education are unable to see any of this from the perspective of [Faddis].

Significantly, Patterson stated the following in his letter with respect to Judge Emas:

> Curiously, the author of the 3rd DCA's opinion, Judge Kevin Emas, commented in the oral argument that he was uncertain as to whether [Faddis] had been sexually harassed or not. After being uncertain about whether she was sexually harassed, the opinion issued 2 weeks later gives a rather flinty opinion that she repeatedly lied throughout her litigation, created a fraudulent plan, and set about to achieve an illegal and fraudulent end. . . . To then see these same elders from Weiss Serota . . . pictured with Judge Emas at his investiture ceremony, one can only wonder if Mr. Gredes' burden at oral argument . . . was lighter than it should have been.

The referee did not make any specific findings as to whether Patterson had an objectively reasonable factual basis for his statement questioning Judge Emas's integrity, or for any of his other statements. She found only that Patterson's reasoning for sending the letter was "flawed." During the formal hearing, Patterson explained that he sent the September 20, 2013, letter after viewing a photograph on the district court's website of Judge Emas with opposing counsel. According to his testimony, Patterson believed that an injustice had occurred in Faddis's case, and that the influence allegedly wielded by opposing counsel and his

- 13 -

firm in the community was the cause of that injustice. Patterson's testimony falls well short of establishing an objectively reasonable factual basis for any of his statements, especially those questioning Judge Emas's integrity, and there is no other evidence in the record that would otherwise establish such a basis. We therefore conclude that Patterson's statements were made with a reckless disregard to their truth or falsity in violation of Bar Rule 4-8.2(a).

The referee based her recommendation of no guilt as to Bar Rule 4-8.2(a) in part on Patterson's ethical duty to his client and his strong belief that sending the September 20, 2013, letter was the appropriate way to expose the perceived wrongdoing in his client's case. Such factors, however, do not relieve Patterson of his guilt and are relevant only in mitigating the discipline imposed. The referee also based her recommendation on the fact that Patterson did not know sending the September 20, 2013, letter was wrong and that there was no evidence he intended to have improper communications with a court. The issue, however, is not whether Patterson sought to have improper communications with a judge about an ongoing case —a violation of Bar Rule 4-3.5 (Impartiality and decorum of the tribunal)— but whether an objectively reasonable factual basis existed for his statements assailing the qualifications and integrity of judges. *See Ray*, 797 So. 2d at 560 (stating that an attorney is not prohibited from communicating with or criticizing a judge as long as the attorney complies with the Rules of Professional Conduct).

Accordingly, the record in this matter clearly contradicts the referee's recommendation as to Bar Rule 4-8.2(a). We therefore disapprove the referee's recommendation and find Patterson guilty of violating Bar Rule 4-8.2(a).

**Bar Rule 4-8.4(d)**

Bar Rule 4-8.4(d) prohibits a lawyer from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice. Our review of the record reveals that Patterson engaged in such conduct by pursuing his own interests in Faddis's appeal, hindering her ability to obtain a more favorable outcome, and nearly resulting in the imposition of additional sanctions against her. He also engaged in such conduct by making inappropriate and disparaging statements in court filings and in a letter distributed to other members of the judiciary about opposing counsel and judges that presided in Faddis's case, contributing to the general lack of civility and professionalism this Court is striving to curb in the legal profession. *See Fla. Bar v. Norkin*, 132 So. 3d 77, 89 (Fla. 2013) ("The Court and the Bar share the 'overarching objective of increasing the professionalism aspirations of all lawyers in Florida and ensuring that the practice of law remains a high calling with lawyers invested in not only the service of individual clients but also service to the public good as well.' ").

The record clearly contradicts the referee's recommendation as to Bar Rule 4-8.4(d).  We therefore disapprove the referee's recommendation and find Patterson guilty of violating Bar Rule 4-8.4(d).

## B.  Discipline

Lastly, we address the referee's recommended discipline of an admonishment with one year of probation.  In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction.  *See Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.  This Court will generally not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.  *See Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999).

Here, our review of the record reveals that Patterson's conduct constitutes far more than mere careless neglect deserving of an admonishment.  He deliberately disregarded the loyalty he owed his client and placed his personal and financial interests at the forefront of her appeal; he submitted filings to the district court containing unprofessional statements disparaging those involved in his client's case; and he knowingly sent a letter to Judge Martinez and others in the judiciary that disparaged opposing counsel and accused Judge Emas of conduct

- 16 -

unbecoming a judge. His conduct violated multiple Bar Rules and he has yet to fully acknowledge the wrongfulness of his actions and accept responsibility for them, even after this Court ordered him to show cause why a more severe sanction should not be imposed.

Furthermore, this Court is greatly troubled by the general lack of respect and professionalism Patterson displayed toward judges and other professionals in court filings and in his letter to Judge Martinez. Such conduct, while an inconvenience or a mere slight to those initially confronted by it, ultimately emboldens others to engage in similar unprofessional or disrespectful acts, the net effect of which is the gradual erosion of public confidence in the courts and the decisions rendered by them. Like all lawyers in Florida, Patterson took the Oath of Admission to The Florida Bar prior to his admission, wherein he affirmatively committed to "maintain the respect due to courts of justice and judicial officers." This commitment is not extraneous to, but coextensive with the obligations set out in the Bar Rules. The Court expects all lawyers to conduct themselves in a respectful and professional manner when accessing the courts or appearing before a judicial officer, regardless of the form or capacity in which the appearance occurs. *See* Code for Resolving Professionalism Complaints, Standards of Professionalism (prohibiting members of the Bar from engaging in unprofessional conduct and defining such conduct as "substantial or repeated violations of the Oath of

Admission to The Florida Bar, The Florida Bar Creed of Professionalism, The Florida Bar Professionalism Expectations, The Rules Regulating The Florida Bar, or the decisions of The Florida Supreme Court").

Given the severity of Patterson's misconduct, we conclude that the referee's recommended discipline is not supported and that a suspension is the appropriate sanction in this case. *See* Fla. Stds. for Imposing Law. Sancs. 4.32 ("Suspension is appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."); 6.32 ("Suspension is appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding."); 7.2 ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").

In *The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009), this Court imposed a ninety-one-day suspension on a respondent who engaged in discourteous and disrespectful behavior towards a judge during jury selection in a criminal proceeding. He interrupted the judge, demanded to be heard on a pretrial motion, and asked jurors to weigh in on who they thought was at fault in a

disagreement he had with the judge. *Id.* at 965. The respondent in *Abramson*, like Patterson, was found to have violated Bar Rules 4-8.2(a) and 4-8.4(d), as well as two other Bar Rules. *Id.* at 966. Patterson's misconduct, in contrast to that of the respondent in *Abramson*, is far more egregious in that he deliberately placed his personal and financial interests ahead of his client's interests and did not limit his misconduct to a single proceeding or filing. Furthermore, this Court has become increasingly concerned by the lack of respect and professionalism exhibited by many Florida lawyers during judicial proceedings and would in all likelihood impose a much lengthier suspension on the respondent in *Abramson* were he to appear before us today. *Norkin*, 132 So. 3d at 89-92 (imposing a two-year suspension on a lawyer who engaged in pattern of disrespectful and unprofessional conduct toward judges and opposing counsel).

In addition, this Court generally imposes a lengthy suspension in cases where a lawyer's personal interests create a conflict of interest. *See e.g.*, *Roberto*, 59 So. 3d at 1106 (suspending the respondent for one year where the lawyer's personal interests created a conflict of interest); *Fla. Bar v. Herman*, 8 So. 3d 1100, 1106-09 (Fla. 2009) (suspending respondent for eighteen months where he represented a client at the same time he represented his own company, which was the client's competitor, without obtaining the client's consent); *Fla. Bar v. Vining*, 721 So. 2d 1164, 1169-70 (Fla. 1998) (suspending the respondent for six months

where the lawyer represented a client individually while his professional association was engaged in litigation with the client).

We conclude, based on a review of relevant case law, and the aggravating and mitigating factors found by the referee, that a one-year suspension is the appropriate sanction in this case.

### III. CONCLUSION

Accordingly, we approve the referee's findings of fact and recommendation of guilt as to Bar Rule 3-4.3. The referee's recommendations of no guilt as to Bar Rules 4-1.7, 4-8.2(a), and 4-8.4(d) are hereby disapproved, and we find Patterson guilty of violating each of those rules. The referee's recommended discipline is also disapproved and Patterson is hereby suspended from the practice of law for one year. Patterson's suspension will be effective thirty days from the filing of this opinion so that he can close out his practice and protect the interests of existing clients. If Patterson notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Patterson shall fully comply with Bar Rule 3-5.1(h). Further, Patterson shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Kelsay Dayon Patterson in the amount of $2,827.09, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and PARIENTE, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.
LEWIS, J. concurs in result.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Matthew Ian Flicker, Bar Counsel, Tampa, Florida, and Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida,

 for Complainant

Russell S. Prince of Palma & Prince, P.A., Valrico, Florida,

 for Respondent