# Supreme Court of Florida

_____

No. SC2020-1685
_____

**THE FLORIDA BAR**,
Complainant,

vs.

**BRIAN P. RUSH**,
Respondent.

May 4, 2023

PER CURIAM.

Respondent, Brian P. Rush, seeks review of a referee's report recommending that he be found guilty of professional misconduct and suspended from the practice of law for three years for failing to follow his client's directives and placing his personal pecuniary interests ahead of the client's stated goals.[1] Rush challenges the referee's findings of fact and recommendations as to guilt, arguing that his conduct did not violate any of the Rules Regulating The

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

Florida Bar (Bar Rules). He also asserts that because he is not guilty of misconduct, he should not be sanctioned and assessed the Bar's costs. We disagree, and for the reasons discussed below, we approve the referee's report in its entirety and suspend Rush from the practice of law for three years.

## I. BACKGROUND

North Park Isles and JT North Park (collectively North Park), both limited liability companies, were owned by three managing members, Todd Taylor, Jack Suarez, and Bob Suarez. North Park owned property in Hillsborough County that was the subject of an eminent domain action by the Florida Department of Transportation (FDOT). North Park and FDOT reached an agreement to relocate a planned drainage pond on the property.

In anticipation of further litigation, Taylor hired Rush in 2014. On behalf of North Park, Taylor signed a fee agreement stating that Rush's legal costs and expenses would be paid by the State of Florida and FDOT. The agreement also stated that if the legal representation was terminated, North Park would be obligated to pay the reasonable value of Rush's services.

- 2 -

In October 2017, the circuit court entered an order of taking for the North Park property necessitating a determination of compensation for the taking. Rush argued that the current placement of a drainage pond would restrict access to the land destroying its developmental value, but that FDOT could move the pond and restore approximately $8,000,000 in value to the land. This would constitute a nonmonetary benefit, and the enhanced value of the land would entitle Rush to an award of statutory attorney's fees. Initially, North Park went along with Rush's argument as the eventual buyer, Jeffery Hills, wanted the pond moved to accommodate model home frontage.

At first, Hills had difficulty obtaining financing and was paying extension fees on the purchase contract. In the spring of 2018, Hills' financing was approved, but the bank would not fund the closing until the eminent domain case concluded. At that point, North Park's objectives changed, and Rush was told that the goal was to settle the eminent domain action quickly to facilitate the sale of the property. Thereafter, Rush began filing a series of unauthorized pleadings and motions in the eminent domain case

seeking to preserve and advance his claim for attorney's fees based on his nonmonetary benefits argument.

North Park met with Rush to discuss the plan of negotiating an expediated settlement to facilitate the sale of the property. During the meeting, Rush reminded North Park that termination of his services would make North Park responsible for paying his legal fees and costs. When asked to approximate the amount, Rush estimated his legal fees and costs to be somewhere between $300,000 and $1,000,000. Though North Park no longer wanted Rush to pursue his argument for nonmonetary benefits, it was afraid to terminate Rush's representation because of the potential liability for a million dollars in fees. North Park emphasized to Rush that the pending sale of the property was the priority and that the closing needed to occur by the end of April 2018.

North Park enlisted its real estate counsel, Richard Petitt, to assist with getting Rush to settle the eminent domain case quickly. But Rush continued to file pleadings with the court that advanced his argument for nonmonetary benefits. Then, prior to consulting with North Park, Rush sent FDOT a settlement proposal waiving

monetary benefits in favor of Rush's nonmonetary benefits argument.

In mid-April 2018, at North Park's urging, Petitt filed a notice of appearance in the eminent domain case on behalf of North Park. He instructed Rush not to file anything further without first obtaining client consent, communicated through Petitt. Despite this clear directive, Rush continued to file pleadings seeking approximately $1,400,000 in attorney's fees based on his argument for nonmonetary benefits.

Rush's unwillingness to cooperate with Petitt ultimately resulted in the circuit court becoming confused as to who was representing North Park. It refused to rule on any pending motions until the issue was resolved. North Park told the court that it was unsure what to do about Rush because it was concerned about its potential million-dollar fee liability.

Based on prior interactions with Rush and safety concerns, the FDOT attorney, Aloyma Sanchez, brought Phillip Hobby, an independent contractor, with her to a hearing in July 2018. After the hearing, Rush was very angry and threatened to sue Sanchez for tortious interference of his fee agreement with North Park,

accused her of scheming to defraud him of attorney's fees, and threatened to file a Bar complaint against her. Rush continued to berate her and followed the pair out of the courthouse. Later, Rush admitted he threatened to sue Sanchez but denied threatening to file a Bar complaint, though he felt he could have filed one based on a comment Sanchez made about an expert witness fee that Rush claimed was disparaging. Sanchez reported the incident to Petitt and her supervisor and asked Hobby to write a memorandum recounting his observations of the encounter. Because of this interaction, FDOT refused to reach an informal settlement with North Park and insisted on formal mediation or a trial to have third-party oversight.

Unable to clarify the representation issue, Petitt sent a client-approved settlement offer to Rush to sign and submit to FDOT, specifying that there be no modifications. Fearing that the wording of the agreement would constitute waiver of his attorney's fees, Rush altered the language without consulting or informing North Park or Petitt and submitted the new version to FDOT. After this unauthorized submission, North Park terminated Rush's

representation and he withdrew from the case, though the court retained authority to determine his attorney's fees.

In August 2018, Rush sued North Park seeking fee arbitration and raising 21 causes of action. All claims were denied, and North Park was declared the prevailing party in a detailed 32-page order. Rush attempted to set aside the findings made by the arbitrator and the parties later entered into a settlement agreement.

Rush also filed and recorded two lis pendens encumbering the property at issue in the eminent domain case. Because Rush had no recorded interest in the subject property, the court dissolved both lis pendens. Rush then filed another lawsuit against Hills, the property purchaser, the individual who had previously held the purchase agreement, and the bank financing the purchase.

In November 2018, North Park and FDOT reached a settlement after formal mediation that did not include relocation of the drainage pond. The stipulated final judgment was entered in January 2019, and FDOT paid North Park the monetary value of the property taken and the expert fees. Rush continued to seek attorney's fees based on his nonmonetary benefits argument despite the agreement. He claimed that North Park, Petitt, and FDOT

engaged in a conspiracy to settle for a low amount to preclude his recovery of fees. Rush called the stipulated final judgment "fraudulent" and a "sham" and attempted to have it undone.

Based on the above findings, the referee recommends that Rush be found guilty of violating Bar Rules 4-1.2 (Objectives and Scope of Representation), 4-1.4 (Communication), 4-1.5 (Fees and Costs for Legal Services), 4-1.7 (Conflict of Interest), 4-3.1 (Meritorious Claims and Contentions), 4-3.4 (Fairness to Opposing Party and Counsel), and 4-8.4(d) (Misconduct).

The referee found one mitigating factor (absence of prior disciplinary record) and five aggravating factors: dishonest or selfish motive in seeking greater attorney's fees against the client's interests and direction; multiple offenses (seven); bad faith obstruction of the disciplinary proceedings by demonstrating improper and unprofessional behavior throughout the disciplinary process; refusal to acknowledge the wrongful nature of the conduct by showing no remorse and portraying himself as the victim of illegal conduct of others; and substantial experience in the practice of law (admitted in 1982 and representing clients in eminent domain cases since 1987). The referee recommends that Rush be

suspended from the practice of law for three years and be assessed the Bar's costs.

## II. ANALYSIS

### A.    Findings of Fact and Recommendations as to Guilt

Rush challenges the referee's findings of fact and recommendations of guilt concerning all seven Bar Rule violations. Our review of a challenge to the referee's findings of fact is limited, and if the findings of fact are supported by competent, substantial evidence in the record, we will not reweigh the evidence and substitute our judgment for that of the referee. *See Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). Generally, "the referee is in a unique position to assess witness credibility" based on being able to observe live testimony, and because of this, the factual findings by the referee are given great deference. *Fla. Bar v. Ratiner*, 238 So. 3d 117, 121 (Fla. 2018) (citing *Fla. Bar v. Germain*, 957 So. 2d 613, 621 (Fla. 2007)). To the extent a party challenges the referee's recommendations concerning guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *See Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla.

2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). The burden is on the party challenging the referee's findings of fact and recommendations concerning guilt to demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. *Germain*, 957 So. 2d at 620.

*Bar Rule 4-1.2*

Under Bar Rule 4-1.2(a), "a lawyer must abide by a client's decisions concerning the objectives of representation . . . [and] whether to settle a matter." R. Regulating Fla. Bar 4-1.2. Rush argues that he believed North Park's main objective was to have the pond relocated and that his continued argument for nonmonetary benefits supported this objective. However, Jack Suarez and Petitt testified at the final hearing that once Hills was able to get financing, the priority was to settle the eminent domain case as quickly as possible to facilitate the sale of the land to Hills. Rush actively frustrated this goal of a quick settlement by continuing to argue for nonmonetary benefits. We conclude that the record supports the referee's findings of fact and that such findings are

- 10 -

sufficient to support the recommendation that Rush violated Bar Rule 4-1.2.

*Bar Rule 4-1.4*

Bar Rule 4-1.4 states a lawyer must "reasonably consult with the client" about accomplishing objectives and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." R. Regulating Fla. Bar 4-1.4(a)(2), (b). Here, Rush admitted that he failed to notify or consult with North Park before sending FDOT a settlement agreement purporting to waive monetary benefits. Rush argues that North Park had implicitly agreed to this settlement agreement based on prior conversations, but Sanchez testified that Rush was never authorized to waive compensation. Rush also admitted to materially altering the client-approved version of the settlement agreement and submitting it without notifying North Park or Petitt of the alterations. Rush continued filing unauthorized pleadings that supported his nonmonetary benefits argument despite North Park's instructions to the contrary. Further, Rush failed to adequately explain his fee agreement, thereby causing North Park to fear that it would be responsible for as much as a million dollars

in attorney's fees if Rush's representation was terminated. This estimation of fees was not explained to North Park by Rush and was based on the argument for nonmonetary benefits being successful, which it was not. Therefore, we determine that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-1.4.

*Bar Rule 4-1.5*

Bar Rule 4-1.5(a) states that a "lawyer must not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost," and a fee "is clearly excessive" either when the fee is "clear overreaching or an unconscionable demand" or the fee is sought "by means of intentional misrepresentation or fraud upon the client." R. Regulating Fla. Bar 4-1.5. Here, the fee agreement stated that FDOT would pay Rush's fees unless the representation was terminated. If the representation was terminated, North Park would be responsible to pay the reasonable value of Rush's services. Rush claimed that under this agreement, he was entitled to the full amount of potential statutory fees based on his argument for nonmonetary benefits.

Attorney's fees in eminent domain cases, as relevant here, are governed by section 73.092, Florida Statutes (2019),[2] which states that fees are "based solely on the benefits achieved for the client" meaning the difference "between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney," which can include "nonmonetary benefits obtained for the client through the efforts of the attorney" to the extent that they can be quantified. The statutory fee schedule allows 33% of any benefit obtained up to $250,000, plus 25% of a benefit between $250,000 and $1 million, plus 20% of any benefit exceeding $1 million. § 73.092(1)(c), Fla. Stat.

Rush was seeking fees based on his argument that moving the retention pond would provide a nonmonetary benefit to the client, the value of which would be $8,300,000. Based on the statute, the attorney's fees would equal approximately $1,730,000. However, Rush never achieved the nonmonetary benefits for the client. There was not an agreement to move the pond before Rush was fired, and

2. Section 73.092 remained unchanged during Rush's representation of North Park.

pond relocation was not included in the mediated settlement agreement or the final judgment. Seeking compensation based on benefits never obtained is patently unreasonable. After the mediated settlement agreement, the amount of attorney's fees due to Rush was calculated to be $110,000.

Thus, Rush's interpretation of his fee agreement and relentless attempts to seek these fees constitute an attempt to collect an illegal, prohibited, or clearly excessive fee or cost in violation of the rule. We conclude that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-1.5.

*Bar Rule 4-1.7*

Bar Rule 4-1.7 states that a lawyer must not represent a client if "there is a substantial risk that the representation . . . will be materially limited by . . . a personal interest of the lawyer." R. Regulating Fla. Bar 4-1.7(a)(2). Here, despite North Park's desire to settle the matter quickly with FDOT to facilitate the sale of the property, Rush kept filing unauthorized motions seeking to advance his claim of nonmonetary benefits, which would result in a greater attorney fee award for Rush. Rush argues that North Park's

original goal was to have the pond moved as a nonmonetary benefit, and he continued to fight for that goal. However, Rush's focus was on obtaining greater attorney's fees for himself, and his continued argument for nonmonetary benefits delayed the settlement of the eminent domain case and could have caused the sale of the property to fall through. Rush's interest in obtaining greater attorney's fees was in direct conflict with the client's goal of settling the case quickly. We conclude that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-1.7.

*Bar Rule 4-3.1*

Bar Rule 4-3.1 states a "lawyer shall not bring or defend" a claim "unless there is a basis in law and fact for doing so that is not frivolous." R. Regulating Fla. Bar 4-3.1. Rush argues he was entitled to seek his attorney's fees from his former client and none of his filings were ever deemed frivolous by the courts. However, in seeking payment of fees, Rush filed two lis pendens to encumber the property, which were subsequently dissolved. Rush did not have more than an equitable interest in the property, which was an insufficient basis for his lis pendens actions. Rush also filed

numerous lawsuits seeking legal fees based on his unsuccessful nonmonetary benefits argument. Rush also attempted to have the mediated settlement in the eminent domain case set aside as he claimed it was a "sham" and "fraudulent." We conclude that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-3.1.

*Bar Rule 4-3.4*

Bar Rule 4-3.4 states that an attorney must not "threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter." R. Regulating Fla. Bar 4-3.4(h). The attorney for FDOT, Sanchez, testified that Rush threatened to file a Bar complaint against her for disparaging his expert witness by commenting that his fee seemed excessive. Rush argues he never threatened to file a Bar complaint and Sanchez's testimony was not corroborated. However, the referee is given great deference with respect to live testimony in determining credibility of witnesses. The referee here found Sanchez's testimony to be credible and generally corroborated by the email she sent to her supervisor after the encounter and by Hobby's testimony. Therefore, we determine

- 16 -

that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-3.4.

*Bar Rule 4-8.4(d)*

Bar Rule 4-8.4(d) states a lawyer must not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." R. Regulating Fla. Bar 4-8.4(d). Here, Rush attempted to set aside the mediated settlement between North Park and FDOT, filed a lawsuit against his former client and the buyer of the property, was unprofessional to opposing counsel, and intentionally impeded the settlement of the eminent domain case on multiple occasions. None of his various lawsuits and attempts to undo the settlement were successful, but Rush did delay North Park from settling the issue and selling the property. North Park had to pay additional attorney's fees to defend against Rush's various attacks. We conclude that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Rush violated Bar Rule 4-8.4. *See Patterson*, 257 So. 3d at 64 (finding violation of rule 4-8.4(d) where lawyer's

pursuit of his own interests hindered the client's ability to obtain a more favorable outcome).

## B.    Discipline

We now turn to the referee's recommended discipline, a three-year suspension.  A referee's recommended discipline must have a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.  *See Fla. Bar v. Picon,* 205 So. 3d 759, 765 (Fla. 2016); *Fla. Bar v. Temmer,* 753 So. 2d 555, 558 (Fla. 1999).  In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is this Court's responsibility to order the appropriate sanction.  *See Fla. Bar v. Kinsella,* 260 So. 3d 1046, 1048 (Fla. 2018); *Fla. Bar v. Anderson,* 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

Here, the referee recommends a three-year suspension.  Rush argues that he should not be sanctioned or taxed with the Bar's costs because he is not guilty of violating the Bar Rules.  He presented no argument to this Court or to the referee as to why a lengthy rehabilitative suspension is not appropriate for his misconduct.  Based on Rush's repeated failure to accede to North

- 18 -

Park's clear directives and his unwillingness to put his client's interests over his own pecuniary gain, as well as his conduct toward other attorneys involved in the eminent domain proceedings, we agree with the referee that Rush's deliberate disregard of his professional obligations warrants a severe sanction.

We conclude that the referee's recommendation of a three-year suspension has a reasonable basis in the Standards for Imposing Lawyer Sanctions. *See* Fla. Stds. Imposing Law. Sancs. 4.3(b) ("Suspension is appropriate when a lawyer knows of a conflict of interest, does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."); 6.2(b) ("Suspension is appropriate when a lawyer knowingly . . . causes interference or potential interference with a legal proceeding."); 7.1(b) ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").

We also conclude that the recommended sanction has a reasonable basis in existing case law. This case is analogous to *Florida Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011), where we

suspended a lawyer for three years for negotiating to the detriment of other class members when he settled a class action settlement for named plaintiffs in an amount "grossly disproportionate to the value of their individual claims" and received a $2 million fee for his firm. *Id.* at 1024. There, the referee found three aggravating factors: prior discipline (private reprimand); multiple offenses (violation of rules 4-1.5, 4-1.7, and 4-8.4(c) and (d)); and substantial experience in the practice of law. *Id.* at 1023. Here, Rush sought unreasonable attorney's fees to the detriment of North Park, among other misconduct, and the referee recommends guilt for seven rule violations, including the same three found in *Adorno*, 4-1.5, 4-1.7, and 4-8.4(d). This case is also like *Adorno* in that, here, the aggravating factors found by the referee substantially outweighed the mitigating factors. Thus, it appears that a three-year suspension is reasonable.

We conclude that Rush's behavior warrants a three-year suspension and that he shall pay the Bar's costs.

### III. CONCLUSION

Accordingly, we approve the referee's report in its entirety. Brian P. Rush is hereby suspended from the practice of law for

- 20 -

three years. The suspension will be effective thirty days from the filing of this opinion so that Rush can close out his practice and protect the interests of existing clients. If Rush notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Rush shall fully comply with Bar Rule 3-5.1(h) and Bar Rule 3-6.1, if applicable. In addition, Rush shall accept no new business from the date this opinion is filed until he is reinstated. Rush is further directed to comply with all other terms and conditions of the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Brian P. Rush in the amount of $19,761.47, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, Mark Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida, and Kimberly Anne Walbolt, Bar Counsel, The Florida Bar, Tampa, Florida; and Kevin W. Cox, Tiffany Roddenberry, and Kathryn Isted of Holland & Knight, LLP, Tallahassee, Florida,

     for Complainant

Brian P. Rush of Woodlief & Rush, P.A., pro se, Tampa, Florida,

     for Respondent