[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10537
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-00970-CEM-GJK

J. PEARL BUSSEY-MORICE, as Personal
Representative of the Estate of Preston Bussey, III,

Plaintiff-Appellant,

versus

PATRICK KENNEDY,
TIMOTHY HERBERNER,
IVETTE GOMEZ,
DON WILLIAMS,
ROBERT OWENS, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 8, 2016)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This case arises out of the tragic death of Preston Bussey, III. Bussey died following officers' attempts to restrain him pursuant to a Baker Act order.

Bussey's personal representative, Plaintiff-Appellant J. Pearl Bussey-Morice, brought this case, asserting that Defendants-Appellees Officers Patrick Kennedy, Timothy Herbener, Timothy Hewatt, Ivette Gomez, Don Williams, Robert Owens, and Matthew Leverich violated Bussey's clearly established constitutional rights and that the City of Rockledge committed a battery upon Bussey resulting in wrongful death when Defendant Officers attempted to restrain Bussey. While the loss of Bussey's life is deeply regrettable, on this record, we cannot find that Defendant Officers violated Bussey's clearly established rights. We therefore affirm the district court's grant of summary judgment to these Defendants on qualified-immunity grounds.

As for Bussey-Morice's battery claim, we conclude that, in responding to the City's motion for summary judgment, she waived the argument she makes before us and instead asserted the contrary position. Because Bussey-Morice may not raise a new argument for the first time on appeal, and because the district court did not err in dismissing Bussey-Morice's battery claim in view of what Bussey-Morice contended below, we affirm the district court's entry of summary judgment on Bussey-Morice's battery claim as well.

2

## I.  Factual Background

We have previously discussed many of the underlying facts of this case in our prior opinion arising out of this incident. *See Bussey-Morice v. Gomez*, 587 F. App'x 621 (11th Cir. 2014) ["*Bussey I*"].  But because *Bussey I* was not directly concerned with Officer Kennedy's conduct, our opinion did not include all of the facts relevant to Kennedy's role.  For this reason, we add to our prior recitation those facts concerning Kennedy and the other officers' reactions to his conduct.

Upon Kennedy's arrival at the scene, Bussey was handcuffed, lying on his stomach, and continuing to struggle against multiple officers attempting to restrain him. Bussey was "kicking violently" and preventing officers from gaining control over his body. Kennedy joined the other officers by grabbing Bussey's feet and moving up Bussey's body in order to gain control of his upper torso and head. While Kennedy used his hand to control Bussey's head, Bussey began turning his head to spit. In response, Kennedy "tried to use a pressure point technique" in an attempt to elicit Bussey's compliance. Kennedy then used his knee to apply additional pressure to Bussey's head in order "to keep him from biting somebody . . . ." Soon after that, Kennedy acquired a pillowcase from hospital staff and used it to cover Bussey's head. According to Kennedy, he checked numerous times to make sure the pillowcase was not restricting Bussey's ability to breathe. Once Bussey was injected with a sedative and anti-psychosis medication, Bussey's

3

resistance began to diminish, and the officers were able to move him onto a gurney and strap him in. At some point, after Bussey was strapped into the gurney, he stopped breathing and passed away.

## II. Procedural History

Bussey-Morice brought suit on behalf of Bussey's estate, suing the City of Rockledge as well as the officers involved in the incident. Bussey-Morice's claims included a Fourth Amendment excessive-force claim against the officers and state-law claims against the City of Rockledge.

After discovery, the district court granted summary judgment in favor of the City of Rockledge and all of the officers, except Officer Gomez and Sergeant Hewatt. We reversed the district court's decision denying summary judgment in favor of Gomez and Hewatt. Now, Bussey-Morice appeals three other findings made by the district court: first, that Officer Kennedy deserved qualified immunity despite the nature of the physical force he used against Bussey; second, that Officers Herberner, Williams, Owens, Gomez, Hewatt, and Leverich deserved qualified immunity despite their failure to intervene between Kennedy and Bussey; and third, that the City of Rockledge deserved sovereign immunity from Bussey-Morice's battery and wrongful-death claim.

## III. Standard of Review

4

We review *de novo* the district court's award of qualified immunity on a motion for summary judgment. *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998). We similarly review *de novo* the district court's award of sovereign immunity on a motion for summary judgment. *Seminole Tribe v. Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994); *Plancher v. UCF Ath. Ass'n*, 175 So. 3d 724, 725 n.3 (Fla. 2015).

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing summary judgments, we consider the record and draw all reasonable inferences in favor of the non-moving party—here, Bussey-Morice. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (per curiam) (citation omitted); *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (citation omitted).

## IV. Discussion

A.  Qualified Immunity

As we noted in *Bussey I*, the qualified-immunity defense aims at striking a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. California* (2009). Qualified immunity protects government officials engaged in discretionary

duties from being sued unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2013).

The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). Qualified immunity protects from litigation "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation . . . ." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Id.* (quoting *Harlow*, 457 U.S. at 815, 102 S. Ct. at 2736) (internal quotation marks & alteration omitted).

Under the qualified-immunity doctrine, a public official must first show that he was acting within the scope of his or her discretionary authority at the time of the challenged conduct. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Here, Kennedy and the rest of the officers undisputedly established this

6

fact, as they were acting within the scope of their discretionary authority as police officers for the City of Rockledge when they encountered Bussey.

The burden then shifts to Bussey-Morice to demonstrate that qualified immunity is not appropriate. *See id.* In order to do this, Bussey-Morice must show that, when viewed in the light most favorable to her, the facts demonstrate that Kennedy and the other officers violated Bussey's constitutional right and that that right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition[,]" at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). We may decide these issues in either order, but, to survive a qualified-immunity defense, Bussey-Morice must satisfy both showings. *Maddox*, 727 F.3d at 1120-21 (citation omitted).

Here, we find that the alleged illegality of Kennedy's actions and the other officers' inactions were not clearly established at the time of the incident. So we do not decide whether a constitutional violation took place. *Id.*

As we have explained, the touchstone of qualified immunity is notice. *Holmes*, 321 F.3d at 1078. The violation of a constitutional right is clearly established if every reasonable official would understand that his conduct violates that right. See *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009).

Our circuit uses two methods to determine whether a reasonable official would understand that his conduct violates a constitutional right. *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). In the first, "[w]e have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citation omitted). Under this method, "[e]xact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from the pre-existing law." *See Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citations omitted).

The second method involves evaluating the officer's conduct and deciding whether the officer's "conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the law of fact-specific case law'" on point. *Fils*, 647 F.3d at 1291 (alteration in original) (citation omitted). Under this method, despite an absence of case law holding the specific conduct unlawful, a "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Coffin*, 642 F.3d at 1014-15; see

8

The obvious-clarity method recognizes that although concrete facts are typically necessary to provide an officer with notice of "the hazy border between excessive and acceptable force," when an officer's conduct is "so outrageous that it clearly goes 'so far beyond' these borders, qualified immunity will not protect him even in the absence of case law." *Fils*, 647 F.3d at 1291-92 (citing *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926-27 (11th Cir. 2000)). This standard, which offers a narrow exception to the general rule that only case law and specific factual scenarios can clearly establish a constitutional violation, *Priester*, 208 F.3d at 927, is a difficult one to meet. *See Hoyt*, 672 F.3d at 977 ("[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.") (quoting *Priester*, 208 F.3d at 926).

### 1. *Kennedy's conduct did not violate a clearly established right.*

Even viewing the facts in the light most favorable to Bussey-Morice, we conclude that, under either method, it was not clearly established at the time of the incident that Kennedy's conduct, and thus, the other officers' failure to intervene, violated Bussey's right to be free from excessive force.

First, we agree with the district court that no decision from the United States Supreme Court, this Court, or the Florida Supreme Court has clearly established that use of pressure-point techniques, use of an officer's knee to hold an

9

individual's head in place, or placing a pillowcase over an individual's head, constitutes excessive force under circumstances sufficiently similar to this case. While Bussey-Morice cites a number of cases in support of her argument to the contrary, none of these cases contain the necessary factual proximity that is required to satisfy the analogue test for whether a right is clearly established.

Bussey-Morice relies heavily on *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002), as support for her claim that Kennedy's conduct constitutes an established constitutional violation. In *Skrtich*, we concluded that the police conduct at issue was unlawful because it consisted of violent force (kicking and punching) used for the sole purpose of inflicting pain as punishment for past disobedience. But *Skrtich* is distinguishable in important respects.

In *Skrtich*, the officers first disabled Skrtich with electric shock. *Id.* at 1299. Skrtich fell to the ground and offered no physical resistance. *Id.* Yet the officers kicked him repeatedly in the back, ribs, and side, and one officer punched him. *Id.* at 1299-1300. When Skrtich fell, three times the officers lifted him onto his knees and continued beating him. *Id.* at 1300. One officer watched and did nothing to stop the beating. *Id.* In contrast, though the officers in Bussey's case attempted to restrain Bussey by tasing him, the tasing had no effect. Bussey continued to resist violently. Unlike the officers in *Skrtich*, who allegedly beat Skrtich to punish him and not to restrain him in accordance with the law, Officer Kennedy placed his

10

knee on Bussey's head and pulled a pillowcase over Bussey to gain control of Bussey in a dangerous situation, when Bussey was spitting and physically resisting efforts to restrain him.[1] While Bussey-Morice argues that Kennedy's actions were "[w]ithout cause or reason," we find that no reasonable reading of the record supports this conclusion. By all accounts, each of Kennedy's actions were aimed at the goal of bringing Bussey under control in a dangerous situation, not punishing him.

Nor do any of the other cases on which Bussey-Morice relies regarding the *established* unlawfulness of Kennedy's conduct bear enough factual similarity for us to find for Bussey-Morice under the first test.  Consequently, Bussey-Morice had to demonstrate that this case presents one of those rare circumstances in which, as a matter of obvious clarity, Kennedy's conduct violated the Fourth Amendment. We find that she cannot.

Prevailing under this second test requires Bussey-Morice to show "that every reasonable officer in [Kennedy's] position would inevitably conclude that

---

[1] In her opening brief, Bussey-Morice tells a somewhat different story.  Specifically, Bussey-Morice characterizes Kennedy as having "smash[ed]" Bussey's head into the ground with the entirety of his bodyweight and having "suffocate[ed]" Bussey with the pillowcase.  But this characterization is simply unsupported by the record.   While we draw all reasonable inferences in favor of Bussey-Morice, these inferences are not reasonable in light of the record. And Bussey-Morice has pointed to no witness testimony or other evidence that supports the conclusions that Kennedy smashed Bussey's head into the hospital floor or Kennedy suffocated Bussey with the pillowcase.  Notably, no medical expert in this case, including Bussey-Morice's own expert, found any indication of head trauma or suffocation.

11

the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993). But Bussey-Morice has failed to establish this.

Bussey-Morice asserts that Kennedy's actions were so "unwarranted, unnecessary, excessive, and gratuitous" that the unlawfulness of his conduct must have been "readily apparent" to him. Based on the complaint in this action, Bussey-Morice appears to rest her conclusion on the assumption that Kennedy acted in "bad faith," "with malicious purpose," or "in a manner exhibiting wanton and willful disregard of human right, safety, or property." Bussey-Morice points to no evidence of record to support the notion that Kennedy's actions were malicious and obviously in violation of the Fourth Amendment.

Kennedy's force increased gradually and in proportion to the degree of resistance exercised by Bussey. Bussey had been resisting restraint from the moment Kennedy arrived at the hospital. After Kennedy unsuccessfully attempted to secure Bussey's legs, Kennedy tried to restrain Bussey's head with his hand. As Bussey began to spit, Kennedy employed the pressure-point technique— a method he learned during police training. Because the pressure-point technique was unsuccessful, Kennedy pressed his knee into Bussey's head—another method he learned during police training. Finally, because Bussey continued to spit, Kennedy used the pillowcase to cover Bussey's head—yet another method he was taught in training.

In light of the fact that so many of Kennedy's actions were both measured to the degree of resistance exhibited and authorized as acceptable methods of police practice, we cannot find, that as a matter of obvious clarity, Kennedy violated Bussey's Fourth Amendment rights.

### 2. *The other officers' failure to intervene did not violate Bussey's clearly established constitutional right*

In the absence of excessive force, no duty to intervene exists. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Circ. 2009). Similarly, when an officer's force does not violate a clearly established right, other officers' failure to intervene does not violate a clearly established right. Because Kennedy's conduct did not violate one of Bussey's clearly established rights, we must find that the other officers' failure to intervene likewise did not violate one of Bussey's clearly established rights.

### B. Sovereign Immunity

The district court granted the City of Rockledge's motion for summary judgment on sovereign immunity grounds. The district court reasoned that because (1) Florida law protects cities with sovereign immunity when suits against their employees allege "bad faith" or "malicious" conduct, and (2) because Bussey-Morice alleged "malicious" conduct against the City of Rockledge police officers, the City was entitled to sovereign immunity. For the reasons below, we agree.

13

Florida Statute § 768.28(9)(a) provides Florida municipalities sovereign immunity from liability arising out of instances where one of its' "officer[s], employee[s], or agent[s] acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a); *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012).

It is undisputed that in multiple parts of Bussey-Morice's complaint, she charges the Rockledge police officers with "evil motive or intent and/or reckless or callous indifference" with respect to Bussey's life. Recognizing § 768.28(9)(a)'s protection, the City of Rockledge raised this statute's sovereign-immunity defense in its Second Motion for Summary Judgment. In response to the City's motion, Bussey-Morice made no attempt to argue that § 768.28(9)(a) was inapplicable to her wrongful-death claim against the City.

We note that Bussey-Morice's complaint offers support for her argument that her claim against the City of Rockledge was *intended* as an alternative and inconsistent claim containing no allegation of "evil motive" or callous indifference" with respect to the City's officers. But Bussey-Morice did not make this argument in her response to the City's motion for summary judgment. In fact, Bussey-Morice did just the opposite. She specifically described the officers as having acted "maliciously"—a category of conduct that when alleged,

14

automatically implicates sovereign immunity under § 768.28(9)(a).  *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008) (citing *Willis v. Dade Cty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. Dist. Ct. App. 1982)).

Bussey-Morice had a responsibility to raise her alternative-and-inconsistent-claims argument in her response to the City's motion for summary judgment.  *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001).  That she did not do.  As a result, we do not consider the argument for the first time on appeal.  As we have explained, a party "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions."  *Id.*; *see also Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (citations omitted).

Even if it is true that Bussey-Morice raised her alternative and inconsistent defense in her complaint, this court has expressly concluded that "a party may not rely on his pleadings to avoid judgment against him."  *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 590 (11th Cir. 1995).  *See Case*, 555 F.3d 1317, 1329.  *See Hutton v. Strickland*, 919 F.2d 1531, 1533 (11th Cir. 1990).

Because Bussey-Morice failed to properly raise her alternative-and-inconsistent-claims theory below, she may not raise it now, for the first time on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004)—especially since she argued a position entirely inconsistent with the one

15

she now advocates:  that the officers acted bad faith, malicious purpose, or wanton and willful disregard with respect to her battery claim.   We therefore must **AFFIRM**[2] the District Court's order.

## V.  Conclusion

For the reasons we have discussed, we affirm the district court's granting of summary judgment to Defendant Officers on the basis of qualified immunity, as well as the district court's entry of summary judgment for the City of Rockledge on the basis of sovereign immunity.

**AFFIRMED.**

---

[2] Although we affirm the district court's decision with regard to qualified immunity and sovereign immunity, we do not find Bussey-Morice's appeal to be frivolous or sanctions to otherwise be appropriate.  We therefore **DENY** Defendants' motion for sanctions.

16