# Supreme Court of Florida

————————

No. SC19-2070

————————

**THE FLORIDA BAR,**
Complainant,

v.

**KELSAY DAYON PATTERSON,**
Respondent.

December 9, 2021

PER CURIAM.

The referee in this disciplinary proceeding found that Kelsay Dayon Patterson committed multiple serious violations of the Rules Regulating the Florida Bar (Bar Rules). Among other things, Patterson without foundation accused judges and opposing counsel and parties of racial bias. But the referee recommended only a ninety-day suspension, largely because he believed that Patterson's misconduct had already been addressed in a prior disciplinary proceeding. The Florida Bar argues that the referee's premise is

incorrect and that Patterson's undisputed misconduct in this case warrants a two-year suspension. We agree.[1]

## I. BACKGROUND

The issues before us turn largely on the relationship between this case and Patterson's previous disciplinary proceeding, which resulted in a one-year suspension starting in November 2018. We therefore begin with a brief description of that earlier proceeding.

### A. First Disciplinary Proceeding: *Florida Bar v. Patterson*

*Florida Bar v. Patterson*, 257 So. 3d 56 (Fla. 2018), involved Patterson's representation of Johanna Faddis in a lawsuit alleging an invasion of privacy by the City of Homestead and related defendants. In one of several appellate decisions in the Faddis litigation, the Third District described Patterson and Faddis as having committed a "fraud on the court" by filing the lawsuit. *Faddis v. City of Homestead*, 157 So. 3d 447, 449 (Fla. 3d DCA 2015). Specifically, Faddis committed "intentional acts of perjury on a central and material issue," contradicting her deposition testimony from an earlier case in which Patterson had also

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

represented her. *Faddis v. City of Homestead*, 121 So. 3d 1134, 1135 (Fla. 3d DCA 2013).

To make matters worse, Patterson committed additional acts of misconduct during the already fraudulent Faddis litigation. First, in a letter to a federal district judge who was presiding over a related case, Patterson "expressed his belief that influential members of the community had manipulated the outcome of the [Faddis] case and implied that a [Third District Court of Appeal] judge was biased in favor of opposing counsel." *Patterson*, 257 So. 3d at 59. Second, in an appeal of an order imposing monetary sanctions against both Faddis and him, Patterson "deliberately disregarded the loyalty he owed his client and placed his personal and financial interests at the forefront." *Id.* at 64. And third, without an objectively reasonable basis for his assertions, Patterson submitted court filings in the Faddis litigation that "either disparaged opposing counsel or expounded upon the alleged bias of judges and the shortcomings of the legal system." *Id.* at 62.

To get a sense of Patterson's intemperate rhetoric in the Faddis case filings, consider this description from an opinion of the Third District:

> Patterson's response to our order to show cause makes no argument on behalf of his client. Rather, it is a screed following hard upon his reply brief filed in this appeal, where he insinuates that he is "being bullied" by the parties, their counsel, or the court in this case, and that a "miscarriage of justice . . . is **knowingly** being perpetrated against him," (emphasis added). He likens "the story" of the case he filed on behalf of Faddis to "the story of Fidel Castro's suffocating grip of Cuba, the Holocaust, Jim Crow laws, and Hillary Clinton." According to him, the trial court sanction—and probably, now this one as well—are part of some political scheme to silence him and his client.

*Faddis*, 157 So. 3d at 453.

In Patterson's first disciplinary proceeding, we ultimately found Patterson guilty of violating several Bar Rules, and we imposed a one-year suspension as a sanction. *Patterson*, 257 So. 3d at 58.

## B.    This Case

The temporal relationship between this case and Patterson's earlier disciplinary proceeding is a bit complicated. Our decision in that proceeding, issued on October 19, 2018, addressed misconduct that occurred between 2012 and 2015 (that is, during Patterson's litigation of the Faddis case). By contrast, this case involves Patterson's misconduct in an entirely separate case that was litigated between 2011 and 2018. The Bar filed the complaint in

- 4 -

this case in December 2019—more than a year after our decision in Patterson's first disciplinary proceeding.

The Bar's complaint in this case followed a referral from U.S. District Court Judge Carlos Mendoza. That referral centered on Patterson's misconduct during his representation of J. Pearl Bussey-Morice in a federal lawsuit, *Bussey-Morice v. Kennedy*, 657 F. App'x 909 (11th Cir. 2016). Bussey-Morice was the mother of a young man who died "following officers' attempts to gain control of him after he had been Baker Acted, had refused to cooperate with medical personnel, and had struggled against officers' repeated attempts to bring him under control in a public hospital's emergency-room lobby." *Bussey-Morice v. Gomez*, 587 F. App'x 621, 622 (11th Cir. 2014). On Bussey-Morice's behalf, Patterson filed a lawsuit against the City of Rockledge and related defendants, alleging excessive force in violation of the Fourth Amendment, battery, and negligent training. *Id.* at 625-26.

After a sanctions hearing in the *Bussey-Morice* case, Judge Mendoza entered a forty-two page order detailing Patterson's unprofessional conduct:

> [T]he record demonstrates that Plaintiff's counsel acted vexatiously throughout the litigation, multiplying the proceedings. . . .
>
> This Court has repeatedly admonished Plaintiff's counsel from failing to comply with court orders; improperly deviating from the legal issues in this case; and baselessly suggesting that Defendants, defense counsel, and the judges presiding over this case have been motivated by some racial or other bias.

*Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-41GJK, 2018 WL 4101004, at *17-18 (M.D. Fla. Jan. 12, 2018).  In light of those findings, Judge Mendoza referred Patterson to The Florida Bar in January 2018.  The Bar's complaint and the appointment of a referee followed in December 2019.

The referee conducted a hearing and eventually issued a report finding that Patterson had engaged in three categories of misconduct while litigating *Bussey-Morice*: (1) Patterson repeatedly alleged unfounded "racial and other biased partiality on the part of opposing counsel and the courts"; (2) Patterson misused an inadvertently disclosed fax and interrogatories; and (3) Patterson committed procedural-rule violations throughout the case and caused unreasonable delays in the litigation.

### 1. Patterson's Unfounded Allegations of Bias

The referee's report detailed many instances during the *Bussey-Morice* litigation when Patterson made unfounded allegations accusing the courts and opposing counsel and parties of racial bias or partiality. For example, during one deposition defense counsel requested that Patterson ask his client to stop making faces and grunting noises. Denying that Bussey-Morice was engaging in such behavior, Patterson asserted that "white American attorneys and white police officers always love to accuse Africans and blacks of always being hostile of always being argumentative and always being nasty."

Another incident happened when, after a disagreement, Patterson told opposing counsel that neither he nor his client would appear for a scheduled deposition, allegedly because they were being treated unfairly based on their race. Patterson sent opposing counsel correspondence, quoted in the referee's report, that said:

> These are the circumstances when Blacks are often portrayed in a negative regard to justify some accidental or strange death. That is not the way I am leaving this planet over the false representations of these officers and others while at Dean Ringers. No chance that is going to happen to me.

Instead of you speaking directly to my point of view, trying to place yourself in the shoes of a man whose race and ancestry shows unfairness, bias, and wrongdoing against Blacks as part of our American history . . . you claim that I instead am behaving unprofessional.

I would rather avoid a scenario that somehow leads to some accusation that I attempted to strike, hit, or confront anyone, that strangely results in my untimely death, against and over the objections of my client. Sure, my wife and my son would have a cause of action, but I would prefer to be around for them, and myself . . . rather than have them face and deal with a host of accusations that I had the strength and violence/anger of 20 wild gorillas when I attacked someone. No thanks, I will leave that sort of creative fantastical writing to the fate of some other unlucky and unfortunate fellow and his family.

(Record references omitted.)

Patterson then filed an "Emergency Motion for Protective Order" in which he referenced African-American history and the fact that he and his client are African-American, and alleged that he felt unsafe around the defendant officers and defense counsel and that appearing at the deposition could result in his and his client's criminal arrest or bodily injury. The motion largely contained speculative or conclusory statements and failed to establish a specific basis for limiting discovery in the case.

In other court filings that Patterson made during *Bussey-Morice*, he said:

> We have clearly now entered a realm of rulings where the credibility of the lawyers and their personalities as exhibited through their pleadings from constant pleas, claims, and a characterization campaign is being decided by the Court.
>
> How could that sort of credibility determination be made, i.e. the Plaintiff and the undersigned did not have a valid concern for their own safety? These sort of actions that are void of truth and/or morality will not be lightly overlooked by any sensible black American.
>
> If the Court cannot understand that black people fear unsubstantiated, distorted, wild, and malicious characterizations against them by non-whites, i.e. Trayvon Martin (but we raised this issue with the Court saying just this same thing before Trayvon Martin had even died) (Preston Bussey was also falsely accused of attacking the security guards by Defendant Gomez), then it is beyond the undersigned's ability to convey a cultural anxiety of black people in this specific regard to the Court.
>
> Any thinking person who knows our American history would quickly be able to appreciate the parallel to what occurred to Preston Bussey, III. The worst part of it all is that the Defendant's lawyers, educated men who must know better, are trying to continue down this path that reflects a sad and ugly American past. That is, they have chosen to serve lies about a matter involving the untimely, tragic, and unnecessary death of an unarmed Black man there in the hospital, on his own accord, seeking medical help, AND NOW being caught red-handed in deceit and dishonesty for which no

conservative would ever ratify out loud, they expect the entitlement of treatment they feel is their birth right.

(Record references omitted.)

The referee ultimately concluded that Patterson did not have an objectively reasonable basis for these repeated allegations accusing opposing counsel and the courts of racial bias and partiality.

### 2. Patterson's Mishandling of an Inadvertent Fax

During discovery, a defendant police officer mistakenly faxed his draft response to interrogatories to Patterson instead of to his own lawyer. The fax cover sheet clearly indicated that the fax was intended for the officer's counsel. Patterson read the responses anyway, and he kept the fax and made no effort to notify defense counsel of the error. When defense counsel learned of the disclosure a few days later, he informed Patterson that the fax was sent by mistake and asked that it be returned, noting that Bar Rule 4-4.4 (Respect for Rights of Third Persons) requires such action. Patterson refused and used the information contained in the inadvertent fax to support a motion and as the basis for filing an amended complaint. Only after the court granted defense counsel's

motion to compel Patterson to return the fax and to strike its contents from the record did Patterson destroy the fax. In his report, the referee deemed this misconduct "egregious."

### 3.     Patterson's Failure to Expedite the Litigation

Finally, the referee found that Patterson's conduct during the *Bussey-Morice* litigation resulted in unnecessary delays and protracted the litigation process. "Whether it was a failure to appear to specific meetings with counsel, failure of a client to appear for deposition, failure to comply with court deadlines and rules which required motions and emergency motions for extension of time, or failure to be prepared as required by the court," Patterson's behavior throughout the litigation unreasonably slowed down the process. The referee specifically found that "there were numerous times when respondent failed to comply with court orders and rules which resulted in sanctions being imposed various times through the case."

### 4.     The Referee's Recommendations

In light of the above-described findings, the referee recommended that Patterson be found guilty of seven violations: committing misconduct (rule 3-4.3); filing frivolous claims (rule 4-

- 11 -

3.1); failing to expedite litigation (rule 4-3.2); unfairness to opposing parties and counsel (rule 4-3.4(c) and (d)); failure to respect the rights of third parties (rule 4-4.4(b)); impugning the integrity of judges (rule 4-8.2(a)); and committing misconduct prejudicial to the administration of justice (rule 4-8.4(d)).

As a sanction, the referee recommended a ninety-day suspension, attendance at ethics school and a professionalism workshop, and payment of The Florida Bar's costs.

The most basic reason the referee recommended a ninety-day suspension is that he thought the Bar was "double downing by seeking an increased suspension when the misconduct here occurred at the same time as the prior misconduct." The referee felt that "the timeline of the misconduct in this case, as it relates to respondent's misconduct in the prior disciplinary case . . . is of great concern." In the referee's view, Patterson "has already been punished by much of the same conduct as he is being accused of here."

To come up with a recommended sanction, the referee looked for misconduct that (in his view) had not already been sanctioned, and he settled on Patterson's mishandling of the inadvertent fax.

- 12 -

The referee deemed that misconduct "totally inappropriate" and "the most egregious thing for which respondent has not yet been punished for."

The referee also reasoned that, even though the *Bussey-Morice* litigation lasted through 2019, most of Patterson's misconduct in the case occurred in or before November 2012. At that time, the presiding judge in the case (Judge Charlene Honeywell) admonished Patterson, calling his filings in the case "appalling." But Judge Honeywell chose not to refer Patterson to the Florida Bar, and the referee found this non referral to be significant.

The recommended sanction also reflected the fact that the referee declined to find any of the four aggravating factors proposed by the Bar. The referee rejected the prior disciplinary offenses and multiple offenses aggravators because "[r]espondent's misconduct in this case was [at] the same time as his misconduct addressed in [the earlier disciplinary] case." He rejected the substantial experience in the practice of law aggravator "because respondent's misconduct in this case was approximately ten years ago." The referee did not explain why he rejected the pattern of misconduct aggravator.

As to mitigation, the referee found that the following applied: absence of a selfish or dishonest motive; full and free disclosure to and cooperation with the Bar; imposition of other penalties or sanctions; remorse; and remoteness of prior offenses.

## II. ANALYSIS

The Bar now asks us not to adopt the referee's recommended ninety-day suspension and to impose a two-year suspension instead.[2] Closely related to that, the Bar argues that the referee erred by finding no aggravating factors. The Bar also argues that the referee erred in finding remoteness of prior offenses as a mitigator and in treating Judge Honeywell's non referral of Patterson in 2012 as a de facto mitigator. We do not have the benefit of counterarguments from Patterson, because he did not file a compliant answer brief.

The applicable standards of review are well known. A referee's findings of mitigation and aggravation carry a presumption of correctness, and we will uphold them unless they are clearly

---

2. Since neither the Bar nor Patterson has challenged the referee's findings of fact and guilt, we approve both without further comment.

erroneous or without support in the record.  *Fla. Bar v. Kinsella*, 260 So. 3d 1046, 1049 (Fla. 2018) (citing *Fla. Bar v. Germain*, 957 So. 2d 613, 621 (Fla. 2007)).  Our review of a referee's recommended discipline is broader and less deferential, because "this Court has the ultimate responsibility to determine the appropriate sanction."  *Fla. Bar v. Barrett*, 897 So. 2d 1269, 1275 (Fla. 2005).

## A.  The Referee Erred by Conflating the Two Proceedings

Compared to the referee, we have a fundamentally different view of the relationship between this case and Patterson's prior disciplinary proceeding.  Patterson has not already been punished for the behavior at issue here.  Patterson's prior disciplinary proceeding related entirely to his conduct in the Faddis case.  By contrast, this case is about Patterson's misconduct in the *Bussey-Morice* case.

For purposes of determining whether the Bar is asking us to impose double punishment on Patterson, it does not matter that *some* of the misconduct found in the earlier case—specifically, making unfounded allegations of bias and undermining confidence in the legal system—is similar *in kind* to some of the misconduct

found here. Nor does it matter that there is some overlap in the time periods covered by the two cases. The fact is that the one-year suspension we imposed in Patterson's earlier disciplinary proceeding did not in any way account for the acts of misconduct that the referee found in this case.

On a more detailed level, we also believe that the Bar has shown that the referee clearly erred in his rejection of the proposed aggravating factors. First, our decision in Patterson's previous disciplinary proceeding means that Patterson had committed prior disciplinary offenses. It does not matter that there was temporal overlap between the misconduct found in the prior case and the separate misconduct found in this case. Our precedents show that the prior disciplinary offenses aggravator can apply even when the conduct sanctioned in a prior case occurred *after* the different conduct being addressed in a case under review. *See Fla. Bar v. Golden*, 566 So. 2d 1286, 1287 (Fla. 1990); *Fla. Bar v. Roberts*, 770 So. 2d 1207, 1208-09 (Fla. 2000).

Second, the referee clearly should have found the pattern of misconduct aggravator. This was established both by the similarity in misconduct between the earlier disciplinary proceeding and this

one, and by the finding in this case that Patterson repeatedly made unfounded allegations of racial bias and repeatedly failed to expedite the litigation. *See Fla. Bar v. Norkin*, 132 So. 3d 77, 87 (Fla. 2013) (pattern established across disciplinary proceedings); *Fla. Bar v. Ratiner*, 46 So. 3d 35, 39 (Fla. 2010) (pattern based on repeated behavior addressed in single disciplinary proceeding).

Third, the referee's rejection of the multiple offenses aggravator was also clearly erroneous. Looking only at this case, Patterson committed several distinct types of misconduct—making unfounded allegations of racial bias, mishandling the inadvertent fax, and repeatedly violating procedural rules and causing unreasonable delays in the litigation. The Bar rightly emphasizes in its brief that this is *not* a case where the referee was asked to find multiple offenses based on a single act that happened to violate multiple Bar Rules.

And fourth, the referee clearly should have found the substantial experience in the law aggravator. Patterson was admitted to the Bar in October 1997. When the *Bussey-Morice* case began in June 2011, Patterson had nearly fourteen years of experience in the practice of law, and he already had experience

appearing in federal court.  Patterson was a seasoned practitioner who should have known that his conduct throughout the *Bussey-Morice* case was inconsistent with his professional obligations under the Bar Rules.

Turning to the mitigation issues, we agree with the Bar that the referee clearly erred by finding the remoteness of prior offenses mitigator.  As we have explained, there was temporal overlap between the misconduct found in Patterson's first disciplinary proceeding and the misconduct here—the two sets of misconduct were not remote from each other.  Moreover, even in instances where the prior disciplinary history is deemed remote in time, it may still be disqualified from consideration as a mitigating factor when the prior misconduct is similar to the misconduct under review.  *See Fla. Bar v. Varner*, 992 So. 2d 224, 230 (Fla. 2008).  We have held that where, as here, there is great similarity between the offenses, the remoteness of the prior offense is not a mitigating factor.  *Id.*

And finally, we agree with the Bar that the referee should not have deemed it mitigating that, unlike Judge Mendoza, Judge Honeywell chose simply to counsel Patterson rather than make a

referral to The Florida Bar. There could be myriad reasons why a judge would choose that approach. A referee's findings on mitigation must be based on an objective assessment of the respondent's conduct—not on another judge's unexplained, discretionary decisions about how to address it.

## B. Patterson's Misconduct Warrants a Two-Year Suspension

Having explained what we believe to be the correct factual backdrop, we have no trouble concluding that Patterson's misconduct warrants a two-year suspension. It is undisputed that Patterson engaged in three distinct types of misconduct, all serious—making unfounded allegations against courts, counsel, and parties; misusing the inadvertent fax; and repeatedly violating procedural rules and thereby failing to expedite litigation.

Patterson's repeated, unfounded allegations of racial bias were particularly egregious. And they were especially damaging—not just to the individuals whose character he unjustly impugned, but more broadly to the public's confidence in our judicial system. Patterson's behavior was diametrically opposed to the civility and professionalism that our Bar Rules and the Oath of Admission demand.

We think that the referee got this case exactly backward. The referee discounted the recommended sanction based on his clearly erroneous conclusion that we had already disciplined Patterson for the misconduct found in this case. Instead, the referee should have found that Patterson's pattern of engaging in such serious and damaging misbehavior warranted an especially severe sanction. *See Fla. Bar v. Bern*, 425 So. 2d 526, 528 (Fla. 1982) ("In rendering discipline, this Court considers the respondent's previous disciplinary history and increases the discipline where appropriate. The Court deals more harshly with cumulative misconduct than it does with isolated misconduct.") (citations omitted); *see also Norkin*, 132 So. 3d at 79-88 (rejecting referee's ninety-day suspension in favor of a two-year suspension because respondent, with a prior disciplinary record for similar acts of misconduct, repeatedly impugned the integrity of judicial officers, conducted himself in an unprofessional and antagonistic manner during court proceedings, and made unprofessional and disparaging statements publicly and in email exchanges regarding opposing counsel).

Under our incremental approach to discipline in cases involving prior acts of similar misconduct, the two-year suspension

more appropriately sanctions Patterson's extensive and repeated unprofessional conduct. *See Fla. Bar v. Altman*, 294 So. 3d 844, 848 (Fla. 2020) (three-year suspension warranted by respondent's multiple prior thirty-day suspensions since "this Court typically takes an incremental approach, imposing increasingly heavier sanctions on respondents who have been previously disciplined for engaging in similar misconduct"); *Norkin*, 132 So. 3d at 92 (public reprimand followed by two-year suspension); *Fla. Bar v. Letwin*, 70 So. 3d 578, 581 (Fla. 2011) (ninety-day suspension followed by one-year suspension).

## III. CONCLUSION

The referee's recommended discipline is disapproved, and Kelsay Dayon Patterson is hereby suspended from the practice of law for two years. As Patterson is already suspended from the practice of law, this suspension is effective immediately. Patterson shall fully comply with Rules Regulating the Florida Bar 3-5.1(h) and, if applicable, 3-6.1. Before seeking reinstatement, Patterson must attend ethics school and a professionalism workshop.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from

Kelsay Dayon Patterson in the amount of $8,548.73, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, and Lindsey Margaret Guinand, Bar Counsel, The Florida Bar, Tampa, Florida; and Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida,

for Complainant

Russell S. Prince of Palma & Prince, PA, Tampa, Florida, and Kelsay D. Patterson, pro se, Tampa, Florida,

for Respondent